# In the United States Court of Appeals
# for the D.C. Circuit

AMAPLAT MAURITIUS LTD., AMARI NICKEL HOLDINGS ZIMBABWE LTD.,

*Plaintiffs - Appellees,*

v.

ZIMBABWE MINING DEVELOPMENT CORPORATION, CHIEF MINING COMMISSIONER, MINISTRY OF MINES OF ZIMBABWE, REPUBLIC OF ZIMBABWE,

*Defendants - Appellants.*

_____

On Appeal from the United States District Court
for the District of D.C.
No. 1:22-cv-00058
Hon. Christopher Reid Cooper

## APPELLANTS' BRIEF

Quinn Smith
Katherine A. Sanoja
GST LLP
1111 Brickell Avenue, Suite 2715
Miami, FL 33131
O: 305-856-7723

*Attorney for Defendants - Appellants*
Zimbabwe Mining Development Corporation, Chief Mining Commissioner,
Ministry of Mines of Zimbabwe, Republic of Zimbabwe

## Certificate as to Parties, Rulings, and Related Cases

Pursuant to D.C. Cir. Rule 28(a)(1), Appellants certify as follows:

### A. Parties and Amici

Appellants are Zimbabwe Mining Development Corporation ("ZMDC"); Chief Mining Commissioner, Ministry of Mines of Zimbabwe (the "Commissioner"); and the Republic of Zimbabwe ("Zimbabwe"). Before the District Court, ZMDC, the Commissioner, and Zimbabwe are the defendants.

Appellees are Amaplat Mauritius Limited ("Amaplat") and Amari Nickel Holdings Zimbabwe Limited ("Amari").

No *amici* appeared before the District Court.

### B. Ruling under Review

The rulings under review are the Memorandum Opinion and Order issued on March 22, 2023, and docketed as ECF No. 38 (the "Mar. 2023 Op."), *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp.3d 11 (D.D.C. 2023), and the Memorandum Opinion and Order issued on February 9, 2024, docketed as ECF No. 51 (the "Feb. 2024 Op."). Both decisions were authored by the Honorable Judge Cooper.

### C. Related Cases

This case has not previously been before this Court. Zimbabwe is not aware of any other related cases in the United States.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............. i

    A.  Parties and Amici ...................................................................... i

    B.  Ruling under Review.................................................................. i

    C.  Related Cases .......................................................................... ii

TABLE OF CONTENTS ....................................................................iii

TABLE OF AUTHORITIES ................................................................ v

GLOSSARY ................................................................................... 1

APPELLANTS' OPENING BRIEF ...................................................... 2

  JURISDICTIONAL STATEMENT ................................................. 2

  STATEMENT OF ISSUES FOR REVIEW ...................................... 3

  PERTINENT STATUTORY PROVISIONS ...................................... 4

  STATEMENT OF THE CASE ....................................................... 6

  SUMMARY OF ARGUMENT ....................................................... 9

  STANDARD OF REVIEW .......................................................... 11

  ARGUMENT ........................................................................... 12

    I.  The District Court incorrectly applied § 1605(a)(1) to find that Zimbabwe impliedly waived its sovereign immunity from lawsuits seeking to recognize judgments on arbitration awards by ratifying the New York Convention..................................................... 12

    A.  The District Court relied on a policy with no textual basis in the New York Convention to apply an arbitration-based theory in a case outside "arbitration agreements and arbitral awards" . 12

       1.  The United States has rejected the notion that the New York Convention provides an implied waiver for the enforcement of arbitration awards .......................................................... 15

          a.  With the United States rejecting the application of the New York Convention as an implied waiver, courts in the United States cannot, under the terms of the New York Convention, impose an implied waiver.............................. 18

2. Finding an implied waiver on these facts would conflict with binding precedent ........................................................ 19

II. The District Court erred when it concluded that ZMDC and the Commissioner impliedly waived their sovereign immunity ..................... 20

III. The District Court improperly applied an implied waiver in the New York Convention while rejecting the three-year statute of limitations in 9 U.S.C. § 207 ..................... 22

IV. The District Court improperly applied *Bancec* to conduct that had nothing to do with the United States .................................. 23

A. The equitable principles in Bancec should only apply to right international wrongs committed by States against Americans.............. 23

B. A claim for alter ego liability has no extraterritorial effect under the FSIA ...................................... 25

V. In a contract case where the contract was terminated, the relevant time for applying the *Bancec* factors should be no more than the existence of the contractual relationship ...................................... 26

VI. The District Court improperly applied the *Bancec* factors ....................... 28

VII. The MOUs did not constitute a special arrangement for service of process under § 1608 ..................... 31

VIII. The District Court erred in deciding the Commissioner is a political subdivision of Zimbabwe ........................... 33

IX. Other arguments advanced by Zimbabwe, but not directly addressed by the District Court, require reversal...................................... 34

CONCLUSION ............................................................... 35

CERTIFICATE OF COMPLIANCE ..................................................... 36

CERTIFICATE OF SERVICE ........................................................... 37

# Table of Authorities

Page

**Cases:**

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*
663 F. Supp.3d 11 (D.D.C. 2023) ..................................... 1

*Argentine Republic v. Amerada Hess Shipping Corp.*
488 U.S. 428 (1989) .................................................. 11

*Berdakin v. Consulado de la Republica de El Salvador*
912 F.Supp. 458 (C.D. Cal. 1995) .................................. 32

*Cicippio-Puleo v. Islamic Republic of Iran*
353 F.3d 1024 (D.C. Cir. 2004) ..................................... 25

*CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Ga.*
8 F.4th 1007 (9th Cir. 2021) ....................................... 22

*Comm'ns Imp. Exp. S.A. v. Congo*
757 F.3d 321 (D.C. Cir. 2014) ................................... 22, 23

*Compagnie Noga D'Imp. et D'Exp., S.A. v. Russian Fed'n*
361 F.3d 676 (2d Cir. 2004) ........................................ 18

*Conn. Nat'l Bank v. Germain*
503 U.S. 249 (1992) .................................................. 23

*Creighton Ltd. v. The Gov't of the State of Qatar*
181 F.3d 118 (D.C. Cir. 1999) ................................... 12, 19

*El-Hadad v. United Arab Emirates*
216 F.3d 29 (D.C. Cir. 2000) ....................................... 11

*Fertilizer Corp. of India v. IDI Mgmt., Inc.*
517 F.Supp. 948 (S.D. Ohio 1981) .................................. 18

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba (Bancec)*
462 U.S. 611 (1983) ...................................... 3, 23, 24, 25, 26

*Foremost-McKesson, Inc. v. Republic of Iran*
905 F.2d 438 (D.C. Cir. 1990) .................................. 2, 19, 30

*G.E. Transp. S.P.A. v. Republic of Albania*
693 F.Supp.2d 132 (D.D.C. 2010) .................................. 32

*Gilson v. Rep. of Ireland*
 682 F.2d 1022 (D.C. Cir. 1982) ............................................... 28, 29

*GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*
 822 F.3d 598 (D.C. Cir. 2016) ................................................. 26

*In Re Space Sys./LORAL v. Yuzhnoye Design Office*
 164 F.Supp.2d 397 (S.D.N.Y. 2001) ......................................... 32

*Ivanenko v. Yanukovich*
 995 F.3d 232 (D.C. Cir. 2021) ................................................. 20

*Khochinsky v. Republic of Poland*
 1 F.4th 1 (D.C. Cir. 2021) ...................................................... 20

*Kiobel, v. Royal Dutch Petroleum Co.*
 569 U.S. 108 (2013) .............................................................. 25

*Kolovrat v. Oregon*
 366 U.S. 187 (1961) .............................................................. 16

*Lindo v. NCL (Bahamas) Ltd.*
 652 F.3d 1257 (11th Cir. 2011) ............................................... 22

*Mora v. New York*
 524 F.3d 183 (2d Cir. 2008) ................................................... 15

*Owens v. Republic Sudan*
 864 F.3d 751 (D.C. Cir. 2017) ................................................. 25

*Princz v. Fed. Rep. of Germany*
 26 F.3d 1166 (D.C. Cir. 1994) ............................................. 12, 19

*Process & Indus. Dev. Ltd. v. Fed. Republic of Nigeria*
 27 F.4th 771 (D.C. Cir. 2022) .............................................. 12, 17

*Rush-Presbyterian-St. Luke's Med. Ctr.*
 877 F.2d 574 (7th Cir. 1989) ................................................... 2

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.*
 *Kommanditgesellschaft v. Navimpex Centrala Navala*
 989 F.2d 572 (2d Cir. 1993) ................................. 13, 14, 16, 17, 18

*Straub v. a P Green, Inc.*
 38 F.3d 448 (9th Cir. 1994) .................................................... 22

*Sumitomo Shoji Am., Inc. v. Avagliano*
 457 U.S. 176 (1982) .............................................................. 15

*TIG Ins. Co. v. Republic of Arg.*
No. 18-mc-00129 (DLF) slip op. (D.D.C. Apr. 18, 2022) .............................. 30

*Transamerica Leasing, Inc. v. La República de Venezuela*
200 F.3d 843 (D.C. Cir. 2000) ............................................ 28, 29, 30

*Verlinden B.V. v. Cent. Bank of Nigeria*
461 U.S. 480 (1983) .................................................... 11

*Wye Oak Tech. Inc. v. Rep. of Iraq*
24 F.4th 686 (D.C. Cir. 2022) ........................................... 12, 19

*Zicherman v. Korean Air Lines Co., Ltd.*
516 U.S. 217 (1996) .................................................... 16

**Statutes:**

9 U.S.C. § 201 ......................................................... 22

9 U.S.C. § 207 .................................................. 3, 5, 22, 23

28 U.S.C. § 1292 ....................................................... 2

28 U.S.C. § 1330 ....................................................... 2

28 U.S.C. § 1603 ....................................................... 2

28 U.S.C. § 1605 ............................................. 2, 4, 11, 12

28 U.S.C. § 1607 ....................................................... 2, 11

28 U.S.C. § 1608 ............................................... 4, 5, 31

**Other:**

George A. Bermann, *Procedures for the Enforcement of New York Convention Awards*, Autonomous Versus Domestic Concepts under the New York Convention, at § 4.02[G], Kluwer Law International (2021) ........................................................... 17

## Glossary

| | |
|---|---|
| **FSIA** | Foreign Sovereign Immunities Act |
| **MOU** | Memorandum of Understanding |
| **ZMDC** | Zimbabwe Mining Development Company |

# APPELLANTS' OPENING BRIEF

## JURISDICTIONAL STATEMENT

This is an action to enforce a foreign judgment issued over ten years ago against ZMDC and the Commissioner, but not Zimbabwe, in Lusaka, Zambia. The District Court found that it had subject matter jurisdiction under 28 U.S.C. § 1330(a), which provides that "the district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action" over a "foreign state," as defined in 28 U.S.C. § 1603(a), where the foreign state is not entitled to immunity under 28 U.S.C. §§ 1605–1607 or an international agreement. Appellants disagree that they waived their immunity, but they do not dispute that the Federal courts are the proper forum.

This Court has jurisdiction to review this appeal under 28 U.S.C. § 1292. The District Court denied Appellants' motions to dismiss based on sovereign immunity. Mar. 2023 Op., p. 1; Feb. 2024 Op., p. 1. A denial of a foreign state's motion to dismiss on the grounds of sovereign immunity is immediately appealable under the collateral order doctrine, as courts have recognized that "sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits. *See Foremost-McKesson, Inc. v. Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990), citing to *Rush-Presbyterian-St. Luke's Medical Center,* 877 F.2d 574, 576 n.2 (7th Cir. 1989). Appellants do not necessarily agree

with those issues decided outside of sovereign immunity, but due to the limited nature of this Court's appellate jurisdiction, Appellants have not raised those issues. Appellants reserve the right to do so.

## STATEMENT OF ISSUES FOR REVIEW

The issues are the same as those presented by Appellants on September 27, 2023 (Document No. 2049107):

1. By ratifying the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), did Zimbabwe impliedly waive its sovereign immunity from lawsuits seeking to recognize judgments on arbitration awards?

2. Where plaintiffs bring an action neither to enforce an agreement to arbitrate nor to confirm an award made pursuant to such agreement, can they still seek an implied waiver of sovereign immunity within the New York Convention?

3. When there is no waiver of sovereign immunity alleged besides the New York Convention, can a party avoid the three-year statute of limitations in 9 U.S.C. § 207 by seeking enforcement of a judgment, not confirmation or recognition of an arbitration award, especially when the New York Convention does not govern a foreign court judgment confirming an arbitral award?

4. Does the fraud or injustice prong in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba (Bancec)*, 462 U.S. 611, 629 (1983) (hereafter "*Bancec*") require conduct directed towards the United States?

5. In a contract case where the contract was terminated, is the relevant time for applying the *Bancec* factors longer than the existence of the contractual relationship?

6. Did the District Court properly apply the *Bancec* factors?

7. Did the Memoranda of Understanding executed by ZMDC and Appellees constitute a special arrangement for service of process under 28 U.S.C. § 1608?

8. Did the District Court err in deciding the Commissioner is a political subdivision of Zimbabwe?

## PERTINENT STATUTORY PROVISIONS

The statutory provisions analyzed most frequently are part of the Foreign Sovereign Immunities Act (the "FSIA"), contained with Title 28, Chapter 97—Jurisdictional Immunities of Foreign States:

28 U.S.C. § 1605(a)(1)

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver

28 U.S.C. § 1605(a)(6)

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

28 U.S.C. § 1608(b)(1)

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality

For ease of reference, Zimbabwe will refer to each of these statutes without the reference to chapter 28 or the abbreviation "U.S.C."

This appeal also calls for the Court to also analyze the following statutes:

9 U.S.C. § 207

Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the

award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

## STATEMENT OF THE CASE

Amaplat and Amari were incorporated in Mauritius, and in 2007 and 2008, they each entered into a memorandum of understanding (each an "MOU" and together the "MOUs") with ZMDC to develop a nickel mine and a platinum mine. Mar. 2023 Op., p. 2. Neither Zimbabwe nor the Commissioner signed the MOUs. ECF No. 40–2, p. 16; ECF No. 40–4, p. 17. The MOUs contained clauses that provided for arbitration under the ICC Rules of Arbitration. Mar. 2023 Op., p. 2.

In 2010, ZMDC cancelled the MOUs, and Amaplat and Amari filed for arbitration. Mar. 2023 Op., p. 2. The ICC's International Court of Arbitration decided that the seat of arbitration would be Lusaka, Zambia. Mar. 2023 Op., p. 2. Amaplat and Amari named ZMDC and the Commissioner as respondents. Mar. 2023 Op., p. 2. Zimbabwe was not a respondent in the arbitration. ECF 40–1, pp. 2–6.

The arbitral tribunal issued its award (the "Award") on January 12, 2014. ECF No. 40–1, p. 4. It ordered the ZMDC and the Commissioner to pay costs and expenses totaling USD 3,120,583.74. ECF No. 40–1, p. 39. There was no relief granted only against the Commissioner. *Ibid*. The tribunal ordered ZMDC to pay USD 46,782,000 in damages. *Ibid*. Zimbabwe was not found liable for anything. Appellants did not allege that ZMDC or the Commissioner were the *alter ego* of anyone.

About five years later, Amaplat and Amari sought to confirm the Award in Lusaka on July 19, 2019 (ECF No. 1–5), obtaining an Ex Parte Order for Leave to Register and Enforce the Final Arbitration Award (the "Ex Parte Order"). ECF No. 1–5; Mar. 2023 Op., p. 2. Zimbabwe was not listed as a party to the award enforcement proceedings. There was no allegation that ZMDC or the Commissioner were the *alter ego* of anyone. The parties dispute whether the Award was served on ZMDC or the Commissioner. *See, e.g.,* Motion to Dismiss, ECF No. 23, pp. 4–5. Amaplat and Amari contend that Zambian counsel was authorized to accept served for ZMDC and the Commissioner. Counsel for ZMDC has confirmed that no such authorization was given and that the papers were not transmitted to ZMDC or the Commissioner. *Ibid*. None of the Appellants appeared in Zambia to challenge the confirmation of the Award.

On January 10, 2022, Amaplat and Amari filed suit against Appellants in the District Court, naming Zimbabwe as a party for the first time. ECF No. 1. Instead of seeking to have the Award recognized, Amaplat and Amari sought to have the Ex Parte Order, also referred to as the Judgment, recognized under the D.C. Uniform Foreign-Country Money Judgments Recognition Act. *Id*.

Appellants filed motions to dismiss, and on March 22, 2023, the District Court granted the motion as to ZMDC and Zimbabwe, dismissing the Complaint without prejudice. Mar. 2023 Op., p. 42. The District Court denied the motion as to the Commissioner. Amaplat and Amari filed an amended complaint on May 24, 2023.

ECF No. 40. Appellants again moved to dismiss. On February 9, 2024, The District Court denied the motions to dismiss. Feb. 2024 Op., p. 21. Appellants timely filed their notice of appeal on March 8, 2024. ECF No. 52.

# SUMMARY OF ARGUMENT

An action to enforce a judgment cannot be an exercise in application of an arbitration treaty and statute, especially when the underlying case had nothing to do with the United States or any attempt to take advantage of the United States financial or legal systems. But this is the case the Court faces. Reversal is appropriate for the following reasons:

- To find an implied waiver of sovereign immunity, the District Court relied on a policy with no textual basis in the relevant treaty, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), to apply an arbitration-based theory in a case admittedly outside "arbitration agreements and arbitral awards." The United States has rejected the notion of an implied waiver in the New York Convention, and due to the reciprocity obligations in the treaty, courts in the United States cannot impose an implied waiver. Finding an implied waiver on these facts would also conflict with binding precedent, and this Court should reverse.

- When Congress implemented the New York Convention, it required courts to interpret it in accordance with Chapter 2 of the Federal Arbitration Act and its three-year statute of limitations. The District Court applied the New York Convention but not the statute of limitations, an impermissible result that warrants reversal.

- In finding that ZMDC and the Commissioner are *alter egos* of Zimbabwe, the District Court strayed from the basis of the test laid down by the Supreme Court. The District Court improperly applied the test to conduct that had nothing to do with the United States when there was no international wrong committed by Zimbabwe and nothing done to an American. The District Court should have also refrained from applying a claim for *alter ego* liability that has no extraterritorial effect under the FSIA.

- Turning to the applicable test for finding an *alter ego*, the District Court too often went against binding precedent, finding fraud or injustice when it was not "demonstrated that [Zimbabwe] seeks any benefits from the U.S. legal system." These are reversible errors.

- The only basis for service of process on ZMDC is a special arrangement for service of process under 28 U.S.C. § 1608 whose words are not broad enough to cover this proceeding, not regularly used by the parties, and rooted in contracts that were replaced with a judgment.

- The facts show that Appellees intended to sue a government official, and when Appellees received the Judgment, they sought to enforce it against a government official. The District Court treated the Commissioner as a subdivision of Zimbabwe, which is reversible error.

For these reasons and those discussed herein, Appellants request reversal.

## STANDARD OF REVIEW

A foreign state is presumptively immune from the jurisdiction of courts in the United States, unless one of the enumerated exceptions specified in 28 U.S.C. §§ 1605 and 1607 is satisfied. *See, e.g., Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). The FSIA is thus "the sole basis for obtaining jurisdiction over a foreign state in federal court" for civil cases. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). Appellants will use the word "State" to refer to a "foreign state."

A district court's denial of a motion to dismiss on grounds of sovereign immunity is reviewed *de novo. See El-Hadad v. United Arab Emirates*, 216 F.3d

29, 31 (D.C. Cir. 2000); *Process & Indus. Dev. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 774 (D.C. Cir. 2022) (referred to as *P&ID II*). The Court has wide latitude in reaching its decision; it does not need to follow the same mode of analysis in applying any immunity exception. *P&ID II*, 27 F.4th at 775.

## ARGUMENT

I. **The District Court incorrectly applied § 1605(a)(1) to find that Zimbabwe impliedly waived its sovereign immunity from lawsuits seeking to recognize judgments on arbitration awards by ratifying the New York Convention**

Like other circuits, this Court narrowly construes § 1605(a)(1). *Creighton Ltd. v. The Gov't of the State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999). Any implied waiver requires intent. *Ibid*. And there must be a showing that the State "indicated its amenability to suit." *Wye Oak Tech. Inc. v. Rep. of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022), citing *Princz v. Fed. Rep. of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994). This is a basic principle from which this Court has "never varied." *Wye Oak*, 24 F.4th at 697.

A. **The District Court relied on a policy with no textual basis in the New York Convention to apply an arbitration-based theory in a case outside "arbitration agreements and arbitral awards"**

In finding an implicit waiver of sovereign immunity, the District Court approached the Award as if the case had little, if anything, to do with arbitration. The District Court correctly found that § 1605(a)(6) (commonly referred as the

"arbitration exception") does not apply. Mar. 2023 Op., p. 30. This ruling is final—Appellees have not cross-appealed. With there being no arbitral award to enforce, the arbitration analysis should have ended. But this was not the case. The District Court chose to instead apply the New York Convention, a treaty governing arbitral awards, as a basis to enforce a foreign judgment, relying almost exclusively on *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993) (referred to hereafter as *Seetransport*). Mar. 2023 Op., pp. 31–35. This was reversible error.

*Seetransport* is a poor vehicle to find an implied waiver from enforcement of a judgment. The "*Seetransport*" theory, as the District Court puts it, relies on a "fundamental policy" that States should not be able to "avail themselves of the Convention's benefits, then assert immunity from award-enforcement actions that the Convention expressly contemplates." Mar. 2023 Op., p. 32. This policy does not arise here.

Zimbabwe was never a party to the MOUs or the arbitration, and it did not intend to receive any benefit from the New York Convention. Zimbabwe is not trying to avoid an "award-enforcement action" because Appellees are trying to enforce a judgment, not an award. And to the extent Zimbabwe contemplated anything in relation to the United States, it would have never presumed to waive immunity from an award older than three years. The United States has made clear, since 1970, that awards governed by the New York Convention and more than three years old have no grounds for enforcement in this country.

In any event, *Seetransport* can never provide any basis to support an implied waiver of sovereign immunity from judgments. *Seetransport* dealt with the enforcement of an arbitration award, as did every case cited by the District Court in support of the "*Seetransport* theory." *Seetransport* incorrectly presumed that ratifying the New York Convention implies a waiver of immunity from enforcing an arbitral award. But this says nothing about judgments. If States, such as Zimbabwe, had wanted to waive their immunity from enforcement from judgments, then they very well could have done so. There are numerous international instruments that provide for enforcement of foreign judgments.[1] Zimbabwe has not ratified any, just as the United States has not.

More than anything, if the "fundamental policy" at issue in *Seetransport* has any value, then there should be some textual connection. None exists. The New York Convention is entitled the "Convention on the Recognition and Enforcement of Arbitral Awards," not judgments. The only cause of action contemplated by the New York Convention is to enforce an arbitration agreement or an arbitral award. The New York Convention provides a number of grounds under which a party can seek to prevent the recognition and enforcement of an arbitral award, none of which are available in the context of a judgment. The language is plainly absent.

---

[1]   *See, e.g.,* Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=137; Convention of 1 February 1971 on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters, available at https://www.hcch.net/en/instruments/conventions/full-text/?cid=78.

Faced with these deficiencies, the decided that because Appellees do not seek enforcement of an arbitration award, they can take advantage of the text of the New York Convention, which deals only with arbitration awards. Mar. 2023 Op., p. 34. The District Court justified this confusing result by framing the problem as one of statutory interpretation. Mar. 2023 Op., p. 34. This misses the point. The issue is the text from which the implied waiver comes. Implied waivers are construed narrowly, and at no point does the District Court identify the text in the New York Convention, the only possible source of a waiver, that provides a waiver from judgment enforcement. To the contrary, the District Court found that this case is outside "arbitration agreements and arbitral awards" but still inside the text of the New York Convention. There is no textual or policy basis for the conclusion, and it cannot stand.

### 1. The United States has rejected the notion that the New York Convention provides an implied waiver for the enforcement of arbitration awards

Before it can apply to judgments confirming arbitration awards, the New York Convention must provide an implied waiver to enforce the underlying award. The District Court's reasoning fails on this point, too. As the Supreme Court has repeatedly stated, "great weight" is accorded to the interpretation by the United States of international treaties to which it is a party. *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184–85 (1982); *Mora v. New York*, 524 F.3d 183, 188 (2d Cir. 2008). The Court has traditionally considered as aids to treaty

interpretation the negotiating and drafting history *(travaux préparatoires)* and any post-ratification understanding of the contracting parties. *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 226 (1996). "While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight." *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961).

Prior to this Court's decision in *P&ID II*, it may have appeared that the New York Convention provided an implicit waiver of sovereign immunity that then applied to the ICSID Convention. The Second Circuit had extensively analyzed the topic. Starting with *Seetransport*, the Second Circuit found an implied waiver in the New York Convention based on the "contemplated enforcement of any arbitral awards in any of the other signatory States[.]" *Seetransport*, 989 F.2d at 578. But these decisions, or their progeny, did not have the benefit of the position of the United States.

In *P&ID II*, at the invitation of this Court, the United States cast serious doubt on the Second Circuit's analysis. The Court asked if the United States "impliedly waives sovereign immunity from actions seeking the recognition and enforcement of foreign arbitral awards in the courts of other New York Convention states by becoming a party to the Convention and agreeing to arbitrate a dispute in a Convention state." *P&ID II*, USCA Case No. 21–7003, Document No. 1931435, p. 21 (D.C. Cir. Jan. 20, 2022). In the past, foreign states had rejected this position in the context of litigation, with none of whom, in Zimbabwe's research, stipulating

to an implied waiver. *See, e.g., P&ID II*, 27 F.4th at 773. The United States, similarly, did not adopt the position that it had impliedly waived its immunity. *Id*., p. 22.

The United States further undermined the reasoning in *Seetransport* by identifying other States that could provide broader immunity defenses than even § 1605(a)(6). This stands in stark contrast to the view taken by the Second Circuit. That court had opined that Nigeria "clearly had to have contemplated enforcement . . . and therefore had implicitly waived" its sovereign immunity defense to claim for enforcing a New York Convention award in the United States. *Seetransport*, 98 F.2d at 578. This position has no legs if the United States does not share the view, as well as the 23 State parties to the UN Convention on Jurisdictional Immunities of States and their Properties.[2] Prominent scholars have similarly noted "the prevailing view . . . that States do not, by ratifying the New York Convention, waive their sovereign immunity to suit, in national court to the extent they enjoy such immunity." George A. Bermann, *Procedures for the Enforcement of New York Convention Awards*, Autonomous Versus Domestic Concepts under the New York Convention, at § 4.02[G], Kluwer Law International (2021). In other words, it is incorrect to assume, as the Second Circuit did, that the Contracting States "clearly" waived sovereign immunity by ratifying the New York Convention.

Given the post-ratification understanding of the United States as to the lack of an implied waiver in the New York Convention, a position shared by many

---

[2]   *See* Status Table as at June 17, 2024, available at https://treaties.un.org/pages/ViewDetails.aspx?src=IND&mtdsg_no=III-13&chapter=3&clang=_en.

contracting states, it is untenable to rely on *Seetransport*. Indeed, the Second Circuit did not identify any other basis besides the text of the New York Convention for finding an implied waiver. *Seetransport*, 989 F.2d at 578. With the post-ratification understanding of the United States in hand, this Court should accord the "great weight" normally given and find that there is no implied waiver of sovereign immunity in the New York Convention.

> **a.  With the United States rejecting the application of the New York Convention as an implied waiver, courts in the United States cannot, under the terms of the New York Convention, impose an implied waiver**

Article XIV of the New York Convention provides that "[a] Contracting State shall not be entitled to avail itself of the present Convention against other Contracting States except to the extent that it is itself bound to apply the Convention." It appears there is only one case that analyzes Article XIV in any detail. *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F.Supp. 948, 953 (S.D. Ohio 1981). This case did not deal with any post-ratification understanding by the United States, but rather the relative friendliness of Indian courts to foreigners. *Id.*, p. 953.

Applying the text of Article XIV, courts in the United States cannot interpret the New York Convention more broadly, especially as to a Contracting State like Zimbabwe, than the United States would apply the New York Convention to itself. It is an "axiomatic principle of international law" that the acts of a State's courts are acts of that State. *Compagnie Noga D'Imp. et D'Exp., S.A. v. Russian Fed'n*,

[361 F.3d 676, 689 (2d Cir. 2004)](). The United States has already stated that it does not consider the New York Convention to be an implied waiver in other nations, so courts in the United States cannot "avail" themselves of the New York Convention to waive Zimbabwe's sovereign immunity. And without the New York Convention, the ICSID Convention similarly cannot apply.

### 2. Finding an implied waiver on these facts would conflict with binding precedent

Since 1990, this Circuit has followed "substantial precedent" to construe the "implied waiver provision narrowly" to three examples from legislative history: "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." *Foremost-McKesson,* 905 F.2d at 444. This Circuit has followed this precedent numerous times. *Princz v. Fed. Rep. of Germany*, 26 F.3d at 1174 (limiting implied waiver to the three examples in legislative history without citing *Foremost-McKesson*); *Creighton*, 181 F.3d at 123 (same). And this Court has stated that it is "reluctant to recognize an implicit waiver of sovereign immunity in other circumstances." *Wye Oak Tech.*, 24 F.4th at 691 (referring to the three examples from *Foremost-McKesson*). Recently, this Circuit drew an even tighter limit around the bounds of implied waiver, limiting it to when "(i) the state's 'executing a contract containing a choice-of-law clause designating the laws of the United States as applicable'; (ii) the state's 'filing a responsive pleading without

asserting sovereign immunity'; or (iii) the state's 'agreeing to submit a dispute to arbitration in the United States.'" *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8–9 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 771 (2022), citing *Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021).

None of these situations apply. The MOUs do not designate any law in the United States as applicable, and Zimbabwe never signed them. Zimbabwe has always asserted its immunity, and it did not agree to submit any dispute to arbitration in the United States. The District Court went far beyond *Khochinsky*, carving out a new category of implied waiver with no connection to the facts. This Court should reverse.

## II. The District Court erred when it concluded that ZMDC and the Commissioner impliedly waived their sovereign immunity

Similar to Zimbabwe, ZMDC and the Commissioner cannot have waived their immunity to enforcement of judgments through the New York Convention. But there are arguments specific to, and different from, Zimbabwe's position. Like Zimbabwe, ZMDC and the Commissioner have repeatedly contested that they impliedly waived their sovereign immunity (ECF No. 23, p. 10; ECF No. 30, pp. 5–6; ECF No. 42, pp. 24–25). Zimbabwe never signed the MOUs, which is also true of the Commissioner. Unlike Zimbabwe, the Commissioner participated in the arbitration, but it is difficult to give much credence to the Commissioner's reduced role. There is no finding that the Commissioner asserted any benefits from the MOUs, participated in their termination, or had any meaningful voice in the

proceedings or life of the MOUs. The tribunal did not find that the Commissioner breached the MOUs, and it did not award damages against the Commissioner. There was no argument in the arbitration that the Commissioner (or Zimbabwe, for that matter) was the *alter ego* of ZMDC. In reality, the Commissioner was more of an innocent bystander.

The Commissioner's appearance in the Award does not change the immunity analysis. There is no arbitral award that Appellees can enforce against the Commissioner. The only award is the same one dated 2014. The judgment-enforcement case against the Commissioner does not fall within the ambit of the arbitration agreement or arbitral award. There is nothing in the text of the New York Convention that contains any waiver from judgment enforcement, and the Commissioner retains his immunity.

Appellees might want to argue the case is stronger for ZMDC, who signed the MOUs and took the lead in the arbitration. Those facts are irrelevant for the present immunity analysis. The District Court did not rely on the arbitration exception, and since this is not an action to enforce an arbitral award, there is no waiver other than the District Court's construction of the implied waiver it found in a "fundamental policy" of the New York Convention. This is insufficient, and ZMDC has retained its immunity.

### III. The District Court improperly applied an implied waiver in the New York Convention while rejecting the three-year statute of limitations in 9 U.S.C. § 207

When the United States ratified the New York Convention, Congress passed Public Law 91–369, later codified as Chapter 2 of the Federal Arbitration Act. Section 201 deals with how the New York Convention must be enforced, and its terms are unequivocal: the New York Convention "shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201. Courts apply the plain meaning of the language. *See, e.g., Straub v. a P Green, Inc.*, 38 F.3d 448, 452 (9th Cir. 1994). And they have enforced the New York Convention based on the command in 9 U.S.C. § 201. *See, e.g., Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011) ("Section 201 of the FAA provides for the enforcement of the Convention in United States courts."); *CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Ga.*, 8 F.4th 1007, 1013 (9th Cir. 2021) (construing "shall" in Chapter 2 as mandatory). When faced with a request to enforce a judgment based on an arbitral award, this Circuit has gone so far as to rule that the New York Convention does not apply. *Comm'ns Imp. Exp. S.A. v. Congo*, 757 F.3d 321, 330 (D.C. Cir. 2014).

Chapter 2 goes on to include Section 207, which provides a deadline. "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court . . . for an order confirming the award as against any other party to the arbitration." This time limit applies to the confirmation of "arbitral award[s] falling under the Convention," and the court

must "'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *Comm'ns Imp. Exp. S.A.*, 757 F.3d at 327, citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

The District Court disregarded this statutory command. By finding an implied waiver, the District Court enforced the New York Convention against Appellants, but it did not do so in accordance with Chapter 2. Rather, the District Court selected a "fundamental policy," one never recognized by the Supreme Court or adopted by this Circuit, without applying Section 207 and its three-year time bar. The District Court cannot both apply the New York Convention, but disregard Section 207. Doing so was reversible error.

### IV. The District Court improperly applied *Bancec* to conduct that had nothing to do with the United States

The District Court correctly cited the presumption that a government instrumentality "should normally be treated as such," and it identified *Bancec* as the basis for overcoming the presumption. Feb. 2024. Op., p. 5. But the District Court improperly extended the case from international wrongs targeting Americans to extraterritorial conduct of all sorts.

### A. The equitable principles in Bancec should only apply to right international wrongs committed by States against Americans

The Supreme Court crafted the *Bancec* test as a remedy for an American bank to set off its losses from the expropriation of its assets by Cuba. *Bancec*, 462 U.S.

at 613. The Cuban instrumentality sought to draw on a letter of credit issued in the United States, and the Cuban government had dissolved its instrumentality so as to avoid a claim for set off. *Id.* It was plainly inequitable for Cuba to take advantage of the United States financial system by drawing on the letter of credit <u>and</u> expropriating the American bank's assets. This was the purpose underlying the Court's use of persuasive equitable principles. *Id.* at 631.

The Supreme Court did not lay down a "mechanical formula," but it also did not open the courthouse doors to every creditor of any State. Rather, the *Bancec* test "is the product of the application of internationally recognized equitable principles to avoid the injustice that would result from permitting a foreign state to reap the benefits of our courts while avoiding the obligations of international law." *Bancec*, 462 U.S. at 634.

This is nothing like Zimbabwe's conduct here. Appellees have not asserted that Zimbabwe had anything to do with the MOUs or their cancellation. Zimbabwe has not committed, or been alleged to cause, any international wrong. The District Court has found that Appellants "have not demonstrated that [Zimbabwe] seeks any benefits from the U.S. legal system." Feb. 2024 Op., p. 11. Zimbabwe was not a party to the confirmation action in Lusaka. Its appearance in the dispute was just an afterthought, an attempt by Appellants to increase their chances of collecting on their now decade-old judgment. Similarly, ZMDC has no connections to the United States, as already found by the District Court, and was not attempting to take advantage of the United States financial system. The Commissioner had no role in

the MOUs, no active role in the arbitration, and certainly no connection to the United States at all. There was no basis to apply the *Bancec* test to Zimbabwe, and the District Court should be reversed.

**B.  A claim for alter ego liability has no extraterritorial effect under the FSIA**

Like the Alien Tort Statute (the "ATS"), the FSIA is a jurisdictional statute that does not create, on its own, a cause of action. *Kiobel, v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 114–15 (2013) (statute "does not expressly provide any causes of action"); *Bancec,* 462 U.S. at 620 (FSIA does not provide the applicable law for the underlying claim). The Supreme Court has spoken directly to the extraterritorial application of the ATS. While the claims that can be pleaded under the ATS are not statutory in nature, "the principles underlying the canon of interpretation similarly constrain courts considering causes of action that may be brought[.]" *Kiobel*, 569 U.S. 108–109. The same rule should apply here.

There is no similar statement regarding the FSIA and its extraterritorial application, but there is no principled distinction from *Kiobel*. The FSIA does not provide a cause of action, outside of the "terrorism exception." *Owens v. Republic Sudan*, 864 F.3d 751, 763 (D.C. Cir. 2017) (FSIA operates as a "pass-through" that leaves the "underlying substantive law unchanged"); *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1027 (D.C. Cir. 2004) (FSIA "does not create a private cause of action"). And the District Court did not identify a private cause of action. *Bancec* speaks to violations of international law, and the *alter ego* analysis

has its basis in federal common law. *Bancec*, 462 U.S. at 629–630. While not the same as the law of nations, it is arguably narrower with no presumption whatsoever to extend outside the boundaries of the United States. The same presumption in *Kiobel* against extraterritorial application should apply, and with the absence of any fact connecting this case to the United States, the District Court should be reversed.

**V. In a contract case where the contract was terminated, the relevant time for applying the *Bancec* factors should be no more than the existence of the contractual relationship**

The *Bancec* test rests on equitable factors that look at the relationship between the State and the claimants. This was the factual context in *Bancec*, and it has played out often in this Circuit. *See, e.g., GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*, 822 F.3d 598, 606–608 (D.C. Cir. 2016). Unlike an international wrong, such as an expropriation without compensation, a contractual relationship provides the counterparties the ability to fully litigate their respective responsibilities, with ample opportunity to present facts and legal argument. The dispute can be in court or arbitration. In such cases, there is a full and fair opportunity for each side to make its case under the applicable rules of evidence and proof.

The District Court's treatment of the subject interjects uncertainty and creates liability far outside the parties' expectations. For example, the District Court has apparently found that the State exercised "significant economic control" over ZMDC (Feb. 2024 Op., p. 7), involved itself in "day-to-day operations of ZMDC and its subsidiaries" (*id.*, p. 8), and "diverted ZMDC's revenue" to government

26

officials (*id*., p. 10). These facts, largely proved through news articles filled with hearsay, would likely come as a surprise to Appellants, who never mentioned any of it during the arbitration.

Appellants offered evidence on a very different theory of ZMDC's conduct, and the Award is replete of examples of corporate formalities and an absence of State control. The MOUs were concluded "on ZMDC's behalf" (ECF No. 40–1, p. 7), ZMDC cancelled the MOUs (*id*.), Appellants argued that ZMDC's board of directors had approved the relevant contracts (*id*., p. 19), Appellants argued the ZMDC board of directors actively negotiated the MOUs (*id*., p. 20), and the Tribunal accepted Appellants' evidence that the Minister of Mines approved the MOUs in accordance with the ZMDC Act (*id.*, pp. 23–24). These arguments were tested through cross-examination and documentary proof.

For an entity that was supposedly under the economic control, on a day-to-day basis, it is quite surprising that none of the parties to the arbitration, the witnesses (who included former ZMDC employees), or the tribunal labored under the notion that the State was totally dominating ZMDC or treating ZMDC as nothing more than an agent.

The better test in such circumstances looks at the parties' behavior while they were parties to the contract and their arguments in the arbitration that followed. There can certainly be cases, different from this one, where the State otherwise enters into the relationship, but this would be similar to *Bancec* and require a different type of conduct.

## VI.  The District Court improperly applied the *Bancec* factors

This Circuit has had many opportunities to analyze the *Bancec* factors, applying two different tests. A State can exercise "complete domination" over an instrumentality such that it operates as a division of the State. *Transamerica Leasing, Inc. v. La República de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000). This is a high bar, requiring that the State operate the instrumentality as a "single enterprise" where the instrumentality is not "meaningfully distinct" from the State. *Id*., at 848. The second test is different. The plaintiff must show the State "exercises its control in such a way as to make the instrumentality its agent." *Id.* at 849. The agency analysis draws on principles of an agent-principal relationship with some modifications due to the way that States operate. *Id*., at 849. The agency relationship is also specific to the cause of action: "jurisdiction [over the sovereign] cannot be maintained if the agent's actions are not related to the substance of plaintiff's cause of action." *Id.* at 850, citing *Gilson v. Rep. of Ireland*, 682 F.2d 1022, 1029–30 (D.C. Cir. 1982). A State is not "amenable to suit upon a contract that its agent made on its own account though, unbeknownst to the contracting plaintiff, the sovereign had authorized the agent to make the contract on the sovereign's behalf. *Transamerica Leasing*, 200 F.3d at 850.

The District Court cited pages 847–848 from *Transamerica Leasing*, as if it were applying a "complete domination" analysis. Feb. 2024. Op., p. 5. But it is unclear if the District Court looked for "complete domination." The District Court did not use those words, preferring "principal and agent." *See, e.g.*, Feb. 2024 Op.,

p. 5. The difference is more than semantics. If the District Court wanted to analyze ZMDC as a "single enterprise" of Zimbabwe, then it failed to do so. The evidence falls far short of this proposition.

An application of ordinary agency principles leads to the same result. As this Court has previously held:

> At a minimum . . . the relationship of principal and agent does not obtain unless the parent has manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors. *Transamerica Leasing*, 200 F.3d at 849.

This type of relationship is not in the facts or the District Court's opinion. There are allegations of former government officials "illegally siphoning funds" from a variety of entities, but no allegation that the State engaged in the conduct described above. The Award does not contain findings to this effect. To the contrary, ZMDC is the one that cancelled the MOUs, not ZMDC acting under the control of the State (much less the Commissioner).

Ordinary agency principles would also limit the analysis of Zimbabwe's actions. "Jurisdiction [over the sovereign] cannot be maintained if the agent's actions are not related to the substance of plaintiff's cause of action." *Transamerica Leasing*, 200 F.3d at 850, citing *Gilson*, 682 F.2d at 1029–30. The District Court cited nothing that showed actions by Zimbabwe related to the Award.

The District Court further undermined its findings by routinely citing to binding precedent that reached the opposite conclusion. When the State appoints an instrumentality's board of directors and holds a majority of its shares, this is not an *alter ego*. Feb. 2024 Op., pp. 7–8, citing *Foremost-McKesson*, 905 F.2d at 448. The same is true of appointing management to implement the State's directives (*compare* Feb. 2024 Op., 8 *with Transamerica Leasing*, 200 F.3d at 851) and requiring shareholder approval for certain transactions. *Compare* Feb. 24 Op., p. 8 *with Transamerica Leasing*, 200 F.3d at 851. In fact, every finding under the economic control and day-to-day management prong is contradicted by binding precedent.

As to the profits and beneficiaries prong, the District Court again cites to contrary precedent and then an OFAC press release referring to actions by the former president and "his senior officials[] and regime cronies" as siphoning "revenue and foreign exchange from the Zimbabwean people." Feb. 2024 Op., p. 10. But these are not actions of the State, not directly linked to ZMDC, and not connected in any way to the MOUs. Indeed, the press release shows the opposite. If the monies were taken from the Zimbabwean people, this means that the State was not involved.

Turning to the fraud and injustice analysis, the District Court strayed too far from *Bancec*. Before a different judge, the District Court has previously ruled that where "there is no evidence" that the State "is trying to reap the benefits of American courts while avoiding potential downside," fraud or injustice is not present. *TIG Ins. Co. v. Republic of Arg.*, 18-mc-00129 (DLF), 19 (D.D.C. Apr. 18,

2022). This result is correct and should be applied here because the *TIG Insurance* court directly applied the facts from *Bancec*. In that case, Cuba was trying to take advantage of courts in the United States by drawing on a letter of credit issued by Citibank after having expropriated Citibank's assets. This is a far cry from our case. The District Court already found that Appellants "have not demonstrated that [Zimbabwe] seeks any benefits from the U.S. legal system." Feb. 2024 Op., p. 11.

The District Court did not correctly apply the *Bancec* factors, and this Court should reverse.

## VII. The MOUs did not constitute a special arrangement for service of process under § 1608

There should be little doubt as to the "hierarchical regime for the appropriate methods of service" and the fact that the District Court found that Appellants only served ZMDC through a "special arrangement" under § 1608(b)(1). Feb. 2024. Op., pp. 15–16. The District Court identified the "special arrangement" as § 12.8.1–2 (ECF No. 40–2, pp. 14–15) and § 10.9.1–2 (ECF No. 40–4, pp. 15–16) in the MOUs. Feb. 2024. Op., p. 16. The clauses are identical and read as follows:

> 12.8.1/10.9.1 The Parties choose the following physical addresses at which documents in legal proceedings or any written notices in connection with this MOU may be served[.]

> 12.8.2/10.9.2 Any notice given in terms of this MOU shall be in writing and shall if delivered by hand to a responsible person during ordinary business hours at the physical address chosen as its domicilium citandi et executandi be deemed to have duly received by the addressee on the date of delivery unless the contrary is proved.

These two clauses are not a special arrangement. There is no language typical of a waiver of service of process, and Appellants have certainly not treated it as such. When Appellants wanted to serve ZMDC in the court proceedings, it did not simply mail the documents the address in 12.8.1.1/10.9.1.1. And the special arrangement did not even occur to Appellants for months. *Compare* ECF No. 12 (specifying service attempted pursuant to 1608(b)(3), not (b)(1)) *with* ECF No. 24, p. 2. The language in the MOUs refers to "documents in legal proceedings or any written notices in connection with [the MOUs]." And the present proceedings are not. The MOUs were cancelled, and the parties are litigating a judgment. There is nothing left from the MOUs to dispute.

Similar clauses have been analyzed by other district courts, two of which the District Court cited. Feb. 2024. Op., p. 17. One case was in a default scenario. *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F.Supp.2d 132, 133 (D.D.C. 2010). The other case is from the Southern District of New York and had language regarding "[a]ll notices and communications between the parties." *In Re Space Sys./LORAL v. Yuzhnoye Design Office*, 164 F.Supp.2d 397, 402 (S.D.N.Y. 2001). This is broader than the language at issue here, and none of the cases cited dealt with the enforcement of a judgment confirming an arbitration award.

The better analysis comes from the Central District of California, where the court found the lack of reference to a waiver of service was dispositive. *Berdakin v. Consulado de la Republica de El Salvador*, 912 F.Supp.458, 466 (C.D. Cal. 1995).* There were many different contractual applications for the clause, similar to the MOUs. In the same way that the District Court faulted ZMDC for not further

limiting the MOUs, Appellants could have been broader, drafting language that encompassed the enforcement of judgments, similar to the lack of language regarding sovereign immunity.

The District Court also failed to properly apply the MOUs. The address in the return of service does not match the address in clause 12.8.1.1. Instead of attempting service at the MMCZ Building at 90 Mutare Road, Appellees served ZMDC at No. 6 Constantia Road. *Compare* ECF No. 40–2, p. 15 *with* ECF No. 24, p. 2. Appellees never provided the document by which ZMDC changed its address under the supposed special arrangement. The District Court pointed to a letter from ZMDC, describing it as a notification of a change of address. Feb. 2024. Op., n. 12. No such language is in the document. ECF No. 32–3. Appellants could have pursued service under 1608(b)(3), which they started. To date, this has not occurred.

## VIII. The District Court erred in deciding the Commissioner is a political subdivision of Zimbabwe

Appellants alleged that the Commissioner is an "agency or instrumentality" of Zimbabwe as well as the State's *alter ego*. ECF No. 40, p. 3. Appellants offered no facts to support these conclusory statements, and the Award never established that the Commissioner is an *alter ego* of Zimbabwe or ZMDC. The Commissioner responded that he is a person and entitled to protection under the Due Process clause of the U.S. Constitution. The District Court took the Amended Complaint,

identified other paragraphs that provided a contradictory description of the Commissioner, and found that the Commissioner is a political subdivision of Zimbabwe. Mar. 2023 Op., p. 19.

Appellants take no issue with the District Court's decision to apply *Transaero* instead of *Bancec* to determine if the Commissioner is a part of the State or an agency and instrumentality. Mar. 2023 Op., pp. 19–26. This is not the core of the Commissioner's jurisdictional objection. Rather, he argues that he should be treated as a person, not as an office. ECF No. 23, pp. 8–9. The Award referred to the Commissioner as "he." ECF No. 40–1, p. 6 ("having his address at . . ."). There is nothing specific about the Commissioner in the Award other than the title pages and the third page of the Award that identifies him as a respondent in the heading and the "Second Respondent" in paragraph two with an address at Zimre Centre. ECF No. 40–1, p. 6. The Award contains a minor damages finding against "Respondents" but nothing specific to the Commissioner. These facts show that Appellees intended to sue a government official, and when Appellees received the Judgment, they sought to enforce it against a government official. The FSIA does not provide for this form of relief, and Appellees' lack of clarity in the arbitration should not lead to liability for the Commissioner or Zimbabwe.

## IX. Other arguments advanced by Zimbabwe, but not directly addressed by the District Court, require reversal

Mindful of the page and word limitations, and this Court's time, Appellees will not provide an exhaustive review of every argument submitted to the District

Court. This Court has the power to uphold Appellees' immunity on a different basis than that considered by the District Court. To this end, Appellees direct the Court to their arguments regarding service of the Judgment, which the District Court based on an incorrect application *Seetransport*. Feb. 2024 Op., n. 9. Appellants disagree with the analysis of *Seetransport* for the reasons described in Section I. Should this Court choose to reach Appellees' arguments, they would provide an alternative basis to preserve ZMDC's immunity. ECF No. 23, pp. 23–24; ECF No. 42, n. 8. The same is true for the failure to serve the Commissioner. ECF No. 23, p. 14.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court, finding that ZMDC, the Commissioner, and Zimbabwe did not waive their sovereign immunity; that ZMDC and the Commissioner are not *alter egos* of Zimbabwe; and that the other reasons described herein merit reversal.

GST LLP

Respectfully submitted,

Dated: June 18, 2024          By: /s/ Quinn Smith

Attorney for
Defendants - Appellants
Zimbabwe Mining Development
Corporation, Chief Mining
Commissioner, Ministry of Mines of
Zimbabwe, Republic of Zimbabwe

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **8,206 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Times New Roman**, using TypeLaw.com's legal text editor.

Dated: June 18, 2024          By:  /s/ Quinn Smith

## Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the Appellate CM/ECF system on **June 18, 2024.** I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

GST LLP

Respectfully submitted,

Dated: June 18, 2024

By: /s/ Quinn Smith

Attorney for
Defendants - Appellants
Zimbabwe Mining Development
Corporation, Chief Mining
Commissioner, Ministry of Mines of
Zimbabwe, Republic of Zimbabwe