# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2024　　　　Decided July 15, 2025

No. 24-7030

AMAPLAT MAURITIUS LTD. AND AMARI NICKEL HOLDINGS
ZIMBABWE LTD.,
APPELLEES

v.

ZIMBABWE MINING DEVELOPMENT CORPORATION, ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00058)

———

　　*Rodney Q. Smith II* argued the cause for appellants. With
him on the briefs was *Katherine A. Sanoja*. *Bethel Kassa*
entered an appearance.

　　*Steven K. Davidson* argued the cause for appellees. With
him on the brief were *Robert W. Mockler* and *Joseph M.
Sanderson*.

　　Before: KATSAS and CHILDS, *Circuit Judges*, and
EDWARDS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*:  Two Mauritian mining companies bring this action against the Republic of Zimbabwe, the Zimbabwe Mining Development Corporation (ZMDC), and Zimbabwe's Chief Mining Commissioner, asking us to recognize and enforce a judgment of the High Court of Zambia that confirmed an arbitral award issued in Zambia.  Plaintiffs argue we have subject matter jurisdiction because Defendants waived their immunity under the Foreign Sovereign Immunities Act (FSIA), which sets out narrow exceptions to a sovereign's immunity from suit in U.S. courts.

Plaintiffs contend that the FSIA's arbitration exception, which waives immunity from an action to "confirm an award," also waives immunity from an action to recognize a foreign court judgment that confirmed an award.  Plaintiffs also rely on the FSIA's implied waiver exception for jurisdiction.  They argue that a foreign sovereign waives its immunity from an action to recognize a foreign court judgment that confirmed an arbitral award when the sovereign signs a treaty governing the recognition and enforcement of arbitral awards and agrees to arbitrate in a jurisdiction that has done the same.

Applying either exception here would require us to conflate two distinct concepts — arbitral awards and foreign court judgments.  We cannot fit a judgment recognition action into a provision that mentions only award confirmation.  Nor can we conclude that Defendants intended to waive their immunity by signing a treaty that governs only the recognition and enforcement of arbitral awards, not the court judgments confirming such awards.  Because neither exception applies, we lack subject matter jurisdiction over this action.

3

## I.

### A.

The FSIA grants foreign sovereigns and their political subdivisions, agencies, and instrumentalities immunity from the jurisdiction of U.S. courts unless a specifically enumerated exception to immunity applies. *See* 28 U.S.C. §§ 1603, 1604. The FSIA has an "express goal of codifying the restrictive theory of sovereign immunity" — under which a sovereign has immunity for its "public but not its private acts" — and "[m]ost of the FSIA's exceptions . . . comport with th[at] overarching framework." *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 182–83 (2021).

Two FSIA exceptions are relevant to this appeal. The first is the arbitration exception, which provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is brought[] either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration . . . or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty . . . in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).

The second is the implied waiver exception. The implied waiver exception states: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity . . . by implication . . . ." 28 U.S.C. § 1605(a)(1).

4

"[W]e have long held that implicit in § 1605(a)(1) is the requirement that the foreign state have *intended* to waive its sovereign immunity." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 691 (D.C. Cir. 2022) (quotations omitted).

Because the FSIA governs the waiver of a sovereign's immunity in courts beyond its borders, we construe these exceptions narrowly, cognizant of the consequences for international relations and the risk of reciprocal expansions of liability over the U.S. government in courts abroad. *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1099, 1108 (D.C. Cir. 2024).

**B.**

Although the FSIA determines subject matter jurisdiction, it creates no independent cause of action here. *See McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012). The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, *et seq*., provides a cause of action to confirm and enforce arbitral awards made pursuant to the New York Convention, a multilateral treaty governing the "recognition and enforcement of arbitral awards." Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. I(1), June 10, 1958, 21 U.S.T. 2517 (New York Convention). Zimbabwe, Zambia, and the United States are all signatories to the New York Convention.[1]

This case, however, is not brought under the FAA, which has a three-year statute of limitations. *See* 9 U.S.C. § 207.

---

[1] *See Participant: Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, United Nations Treaty Collection (last visited June 30, 2025), https://treaties.un.org/Pages/showDetails.aspx?objid=080000028002a36b&clang=_en [https://perma.cc/U5HY-DXN9].

5

Instead, this case is brought under the District of Columbia Uniform Foreign-Country Money Judgments Recognition Act (the D.C. Judgments Recognition Act). The D.C. Judgments Recognition Act provides a cause of action to recognize and enforce a foreign court judgment that "[g]rants or denies recovery of a sum of money" and is "final," "conclusive," and "enforceable" under the law of the country where it was rendered. D.C. Code § 15-363. Within fifteen years of a foreign judgment's issuance, a party may bring an action under the D.C. Judgments Recognition Act to turn the foreign judgment into a domestic judgment, rendering it enforceable in the United States. *See id.* §§ 15-367, 15-369.

## II.

### A.

This action under the D.C. Judgments Recognition Act originates with a contract dispute in Zimbabwe.[2] In the late 2000s, two Mauritian mining companies, Amaplat Mauritius Ltd. (Amaplat) and Amari Nickel Holdings Zimbabwe Ltd. (Amari), decided to develop nickel and platinum mines in Zimbabwe. To do so, they entered into memoranda of understanding (MOUs) to form joint ventures with ZMDC — a corporation established by Zimbabwean law to engage in activities in the development of mining industry. *See* Zimbabwe Mining Dev. Corp. Act, ch. 21:08, § 22.26 (1990) (Zim.). The MOUs contained provisions requiring any dispute to be resolved before the International Chamber of Commerce's International Court of Arbitration (ICC).

---

[2] As the issues we reach concern only the legal sufficiency of the jurisdictional allegations, we assume the following facts to be true on our review. *See Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 8 n.1 (D.C. Cir. 2017) (citing *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).

6

After a brief period of mining development, ZMDC tried to terminate the MOUs. Relying on the arbitration provisions, Amaplat and Amari initiated arbitration before the ICC, naming as respondents ZMDC and the Chief Mining Commissioner of Zimbabwe's Ministry of Mines. The ICC selected Zambia as the seat of the arbitration. ZMDC and the Commissioner initially agreed to participate in the arbitration, but eventually withdrew from the proceedings.

In 2014, the arbitral panel issued a final award finding ZMDC liable for breach in the amount of $42.9 million to Amaplat and $3.9 million to Amari, with 5% annual interest. The award also directed the respondents to pay the costs and expenses of the arbitration. Amaplat and Amari did not receive the amount due under the award.

Several years later, Amaplat and Amari sought and obtained a judgment from the Registrar of the High Court of Zambia registering the award pursuant to the New York Convention. The judgment empowers Amaplat and Amari to enforce the award "in the same manner as a judgment or order" of the High Court.

**B.**

In 2022, Amaplat and Amari filed this civil action in the District Court for the District of Columbia against ZMDC, the Commissioner, and — for the first time — the Republic of Zimbabwe itself. The Complaint sets forth one count to recognize and enforce the judgment of the High Court of Zambia pursuant to the D.C. Judgments Recognition Act. The Complaint also states that Defendants waived immunity from suit under the FSIA because this action falls within the arbitration and implied waiver exceptions to sovereign

7

immunity.  In response, Defendants filed motions to dismiss, arguing, as relevant to this appeal, that the two FSIA exceptions are inapplicable.

The district court ruled on the scope of both exceptions to immunity.  It determined that the arbitration exception does not apply to waive Defendants' immunity because the exception covers actions to confirm arbitral awards, not actions to recognize and enforce foreign court judgments.  The district court, however, held that the implied waiver exception does apply.  In doing so, the district court considered the Second Circuit's decision in *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993) (*Seetransport*).  *Seetransport* held that a foreign sovereign waived its immunity under the implied waiver exception from a claim to confirm an arbitral award *and* from a claim to recognize a foreign court judgment confirming the arbitral award because the sovereign both (1) signed the New York Convention and (2) agreed to arbitrate in a jurisdiction that had done the same.  *See id.* at 578–79.  Determining that *Seetransport* provided the best framework for this case, the district court reasoned that signing the New York Convention and agreeing to arbitrate in Zambia waived immunity from this action to recognize a foreign court judgment.  After the district court determined that Defendants waived their immunity from suit and accordingly denied their motions to dismiss, Defendants filed this appeal.

## III.

We have jurisdiction to review the denial of a foreign sovereign's assertion of sovereign immunity under the collateral-order doctrine.  *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 104 F.4th 287, 292–93 (D.C. Cir.

8

2024).  We review the district court's denial of Defendants'
motions to dismiss *de novo*.  *Zhongshan Fucheng Indus. Inv.
Co. v. Fed. Republic of Nigeria*, 112 F.4th 1054, 1061 (D.C.
Cir. 2024) (citing *Transamerica Leasing, Inc. v. La Republica
de Venezuela*, 200 F.3d 843, 847 (D.C. Cir. 2000)).  "When a
plaintiff asserts jurisdiction under the FSIA, the defendant
foreign state bears the burden of proving that the plaintiff's
asserted statutory exception to immunity does not apply."  *Id.*
(citing *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99,
102 (D.C. Cir. 2015)).

## IV.

We begin with the arbitration exception.[3]  We agree with
the district court that the arbitration exception is inapplicable:
there is a basic distinction between actions to confirm foreign
arbitral *awards* and actions to domesticate foreign judicial
*judgments*.  The arbitration exception by its plain terms applies
to the former, not the latter.

To fall within the arbitration exception, "the action" must
be "brought[] either to enforce an agreement . . . to submit to
arbitration . . . or to confirm an award made pursuant to such
an agreement to arbitrate."  28 U.S.C. § 1605(a)(6).  Plaintiffs
do not argue that this is an action to enforce an agreement to
arbitrate, as the MOUs' arbitration provisions were enforced
when the arbitration took place.  But this also is not an action

---

[3] Defendants argue that the arbitration exception is not properly
before us on appeal because the district court rejected the argument
below and Plaintiffs did not cross-appeal.  But "[p]arties who win in
the district court may advance alternative bases for affirmance that
are properly raised and supported by the record without filing a
cross-appeal, even if the district court rejected the argument."
*Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1028 (D.C. Cir.
2020) (quotations omitted).

9

to confirm an arbitral award. Plaintiffs filed such an action in Zambia and obtained confirmation of the award from the Zambian High Court. They did not file any such action in the United States within the three-year limitations period imposed by the FAA. *See* 9 U.S.C. § 207. Rather, this is an action to recognize and enforce a foreign court judgment.

Nowhere does the arbitration exception mention foreign court judgments. And reading foreign court judgments into statutory text that references only award confirmation would require collapsing two concepts that we consistently have understood to be distinct. As we previously explained, we "have long recognized the conceptual difference between arbitral awards and foreign court judgments on arbitral awards." *Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 330 (D.C. Cir. 2014) (*Comimpex*). An arbitral award typically arises from a contract, while a court judgment is an act of a sovereign. In accordance with these distinct factual predicates, "[a]s a matter of U.S. law, the mechanism for" recognizing and enforcing an arbitral award is different from the mechanism for recognizing and enforcing a foreign court judgment. *Id.* (quoting Amicus United States Br. 14). "Confirmation is the process by which an arbitration award is converted to a legal judgment," *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 875 (D.C. Cir. 2021), involving review of the arbitral award and arbitral process. By contrast, judgment recognition converts a foreign court judgment into a domestic court judgment, involving review of the foreign court order and judicial process. *See* D.C. Code § 15–367. In conducting these separate inquiries, courts apply federal law to award confirmation actions, *see, e.g.*, 9 U.S.C. §§ 1, *et seq.*, but state law to judgment recognition actions, *see, e.g.*, D.C. Code §§ 15–361, *et seq.*

10

Despite these well-established distinctions between award confirmation and judgment recognition, Plaintiffs propose two ways to interpret "confirm an award" in the arbitration exception that they contend would cover this judgment recognition action. First, they argue that the phrase should be defined by "[t]he relief sought," namely "turning an award into a judgment." Appellee Br. 46. But here Plaintiffs do not seek to turn an award into a judgment; they seek to turn a foreign judgment into a domestic judgment. Second, Plaintiffs define "confirm" as "give . . . approval to," and argue that the function of this action is in effect to give approval to the underlying award. *See Confirm*, Black's Law Dictionary (5th ed. 1979). But this action ultimately asks us to review a foreign court judgment, not an arbitral award.

We therefore decline Plaintiffs' invitation to expand the reach of the arbitration exception beyond its plain terms.

**V.**

We next turn to the implied waiver exception. For similar reasons, the implied waiver exception also does not apply here. Plaintiffs argue that a foreign sovereign waives its immunity from an action to recognize a foreign court judgment that confirmed an arbitral award when the sovereign signs the New York Convention and agrees to arbitrate in a signatory state. We construe this exception narrowly and look for strong evidence of the sovereign's intent to waive immunity. The New York Convention governs the recognition and enforcement of arbitral awards, not of foreign judgments. Signing the New York Convention thus is insufficient to show Defendants' intent to waive immunity from judgment recognition actions.

11

**A.**

The implied waiver exception provides subject matter jurisdiction "in any case . . . in which [a] foreign state has waived its immunity . . . by implication." 28 U.S.C. § 1605(a)(1). "The FSIA does not specifically define what will constitute a waiver by implication, but our circuit has followed the virtually unanimous precedent construing the implied waiver provision narrowly." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021) (quotations omitted). To waive immunity by implication, a foreign sovereign must have "at some point indicated its amenability to suit." *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994). For that reason, we have "consistently concluded that what matters . . . is the foreign sovereign's actual intent," *Wye Oak Tech., Inc.*, 24 F.4th at 697, and accordingly "rarely" find waiver "without strong evidence that this is what the foreign state intended," *Khochinksy*, 1 F.4th at 8 (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990)).

**B.**

Plaintiffs urge us to follow the Second Circuit's decision in *Seetransport* to conclude that the implied waiver exception applies. As described above, *Seetransport* applied the implied waiver exception both to a cause of action to confirm an award and a cause of action to recognize a foreign court judgment confirming an award. *See* 989 F.2d at 578–79. As the basis for the first waiver, the Second Circuit looked to the text of the New York Convention, emphasizing that it "expressly permits recognition and enforcement" of arbitral awards in signatory states. *Id.* at 578. Accordingly, the Second Circuit reasoned that if a state that had signed the Convention later entered into an agreement consenting to arbitration in a jurisdiction that had

12

done the same, it "logically . . . had to have contemplated the involvement of the courts of any of the Contracting States in an action to enforce the award." *Id.* at 579. Yet in extending this waiver a step further to also encompass the claim for judgment recognition, the Second Circuit did not rely on the text or scope of the New York Convention. Instead, it reasoned that the waiver extended merely because "the cause of action [to enforce a foreign judgment] is so closely related to the claim for enforcement of the arbitral award." *Id.* at 583.

Even assuming *arguendo* that a foreign sovereign intends to waive its immunity from actions to confirm arbitral awards when it signs the New York Convention and agrees to arbitrate, such conduct does not demonstrate an intent to waive immunity from judgment recognition actions. The New York Convention governs only the recognition and enforcement of arbitral awards. Its text makes clear that "[t]his Convention shall apply to *the recognition and enforcement of arbitral awards* made in the territory of a State other than the State where *the recognition and enforcement of such awards* are sought." New York Convention, Art. I(1) (emphasis added). The Convention says nothing about recognizing foreign court judgments after having sought recognition and enforcement of the award. Likewise, the FAA, as the statute that codifies the Convention in U.S. law, mentions only the confirmation and enforcement of awards. *See Comimpex*, 757 F.3d at 327 ("Neither section 207 nor any other provision of Chapter 2 mentions foreign court judgments. Nor is there a reference to foreign court judgments in FAA Chapter 1, which has residual application.").

Plaintiffs contend that the Convention "expressly preserves . . . arbitral parties' right to rely upon domestic laws that are *more favorable* to award enforcement than are the terms of the Convention," *id.* at 328, which would include,

13

Plaintiffs argue, the D.C. Judgments Recognition Act.  But, here, signing the Convention is the purported expression of Defendants' intent to waive immunity by implication.  The possibility of actions beyond the Convention's scope does not provide clear evidence of what the sovereign intended by signing the Convention.

Indeed, there are other international treaties that *do* govern the recognition and enforcement of foreign court judgments. *See, e.g.*, Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, July 2, 2019, No. 58036.  At least one explicitly covers both judgments and awards, unlike the New York Convention.  *See* Interamerican Convention on Territorial Effectiveness of Foreign Arbitration Awards, Art. 1, June 14, 1980, OAS T.S. 51 ("This Convention shall apply to *judgments and arbitral awards* . . . ." (emphasis added)).  Zimbabwe, Zambia, and the United States have not signed those treaties.[4]

In light of the scope of the New York Convention, asking only whether foreign court judgments are "closely related" to arbitral awards is too insubstantial a connection to establish strong evidence of a sovereign's intent to waive its immunity. Even when we have recognized that "an arbitral award and a court judgment enforcing an arbitral award are closely related," we have reaffirmed that "they are nonetheless distinct from one

---

[4] *See Participant: Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters*, United Nations Treaty Collection (last visited June 30, 2025), https://treaties.un.org/Pages/showDetails.aspx?objid=08000002806 26108&clang=_en [https://perma.cc/77N9-7CEP]; *Signatory Countries: Interamerican Convention on Territorial Effectiveness of Foreign Arbitration Awards*, O.A.S. (last visited June 30, 2025), http://www.sice.oas.org/dispute/comarb/intl_conv/caicmoe.asp [https://perma.cc/N9DC-B2TA].

14

another . . . and that distinction has long been recognized." *Comimpex*, 757 F.3d at 330 (quotations omitted). We do not see the necessary evidence of intent to waive immunity by signing a treaty that governs arbitral awards, not foreign court judgments.

## C.

Plaintiffs nevertheless argue that we should follow *Seetransport* based on two prior cases in which we referenced the decision. First, in 1999, we noted that the Second Circuit, "correctly we think," reasoned that a sovereign "must have contemplated" award-enforcement actions in other signatory states when it signed the New York Convention and agreed to arbitrate in another signatory state. *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999). We concluded, however, that a sovereign agreeing to arbitrate in a New York Convention jurisdiction was insufficient to show that it intended to waive immunity from award actions if the sovereign itself had not also signed the Convention. *See id.* In a subsequent unpublished judgment, we relied on *Creighton* for the proposition that "a sovereign, by signing the New York Convention, waives its immunity from arbitration-enforcement actions in other signatory states." *Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019) (unpublished).

Neither case concerned a foreign court judgment; they both dealt with arbitral awards. And we have made clear that, even after *Creighton* and *Tatneft*, we have not yet "formally adopted" *Seetransport*'s conclusion that signing the New York Convention and agreeing to arbitrate is even sufficient to waive immunity from award actions. *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 774 (D.C. Cir. 2022); *NextEra*, 112 F.4th at 1100 (quoting *id.*). We once again leave that question "for another day." *NextEra*, 112 F.4th at 1100.

15

But we resolve that such conduct is insufficient to establish the requisite intent to waive immunity from foreign judgment actions that are not governed by the Convention.

## VI.

Because we conclude that neither the arbitration exception nor the implied waiver exception applies to waive Defendants' immunity, we need not reach the remaining issues presented on appeal.

The parties dispute whether ZMDC and Zimbabwe have an alter ego relationship and thus whether ZMDC's agreement to arbitrate can be attributed to Zimbabwe for purposes of a waiver of immunity. *See TIG Ins. Co. v. Republic of Argentina*, 110 F.4th 221, 229 (D.C. Cir. 2024) (analyzing *alter ego* status to determine whether instrumentality's arbitration agreement binds foreign state for purposes of immunity waiver). We need not resolve this question because, even assuming ZMDC and Zimbabwe have an alter ego relationship, neither exception would apply to waive their immunity for the reasons described above.

The parties also dispute whether the Commissioner is sued as a state entity subject to the FSIA or as an individual subject to diplomatic immunity. *See Samantar v. Yousuf*, 560 U.S. 305, 315 (2010) (concluding that FSIA does not govern immunity of foreign officials). Again, even assuming Plaintiffs prevail in showing that the Commissioner is sued as a state entity, the Commissioner would be subject to our same analysis under the FSIA exceptions and thus immune from suit.

Finally, Defendants' contentions of inadequate service of process are outside the scope of this collateral appeal and, in any event, are superseded by the lack of subject matter

16

jurisdiction. *See La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 533 F.3d 837, 840 (D.C. Cir. 2008).

**VII.**

For the foregoing reasons, neither the arbitration exception nor the implied waiver exception applies to waive Defendants' immunity from this action. Accordingly, we reverse the district court's determination that it has subject matter jurisdiction, vacate the remainder of the district court's orders addressing the issues we do not reach in this appeal, and remand this case with instructions to dismiss for lack of jurisdiction.

*So ordered.*